IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | MAGISTRATE NO. 22-<br>**UNDER SEAL** |

**APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this ex parte application for an Order pursuant to 18 U.S.C. § 2703(d). The Order would require **ATT Wireless (including Cricket), Verizon, T-Mobile, MetroPCS, and Sprint Corporation** ("the Service Providers") to disclose certain records and other information pertaining to the cellular telephone towers described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND

1. The United States may use a court order issued under 18 U.S.C. § 2703(d) to require a provider of electronic communication service to disclose records or other information pertaining to a subscriber to or customer of such service, not including the contents of any communications. Cellular service providers are providers of an electronic communications service, as defined in 18 U.S.C. § 2510(15). Accordingly, the United States may use a court order issued under 18 U.S.C. § 2703(d) to require the Service Providers to disclose the items described in Part II of Attachment A, which are "record[s] or other information pertaining to a subscriber to or customer of such service." 18 U.S.C. § 2703(c)(1).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. See 18 U.S.C. § 2703(d). Specifically,

the Court is a district court of the United States that has jurisdiction over the offense being investigated. See 18 U.S.C. § 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that … the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Attachment A are relevant and material to an ongoing criminal investigation.

## FACTS ABOUT THE ONGOING CRIMINAL INVESTIGATION

4. The United States is working with the Pennsylvania State Police Western Regional Auto Theft Task Force ("WRATTF") in the investigation and prosecution of crimes associated with the organized theft of vehicles, heavy equipment, landscaping equipment and all-terrain vehicles. The investigation concerns violations of 18 U.S.C. Sections 2312 and 2314. Based on the information gathered thus far during this investigation, as described in some detail below, the suspects in the two interstate theft offenses described below victimized a dealership and a car rental business in Pennsylvania and then apparently transported the stolen items into the States of West Virginia and Virginia.

### The Allegheny County Thefts

5. The FBI is working with WRATTF in the investigation and prosecution of crimes associated with organized thefts of property, vehicles, heavy equipment, landscaping equipment and all-terrain vehicles. On September 16, 2021 at approx. 0331 hours six (6) registration plates were stolen from vehicles parked in the area of Enterprise Rent A Car, located at 300 Pinewood Lane, Warrendale, Pennsylvania 15086, Marshall Township, Allegheny County. List of stolen plates:

a. blue Honda accord – Pennsylvania plate JSR2643

b. white Chevrolet Colorado - Virginia plate UGU 8526

c. grey Jeep Grand Cherokee - Pennsylvania plate HMH 6252

d. blue Subaru Outback - Pennsylvania plate HNC 8197

e. white Chevrolet Malibu - Tennessee plate 3S81C6

f. grey Ford Ranger - Massachusetts plate 3BCX11

6. The investigations include an incident involving the theft of a black 2019 Cadillac Escalade with the reported VIN of 1GYSHCKJXKR310153 as well as the thefts of the following six additional vehicles: a 2018 Mercedes-Benz, Model S-Class S 450 4Matic, VIN WDDUG6EB8JA367109, a 2018 Mercedes-Benz, Model S-Class S450 4Matic, VIN WDDUG6EB1JA409460, a 2020 Ford F-250, Model SD Platinum, VIN 1FT7W2BT0LEC25395, a 2019 Bentley, Model Bentayga V8, VIN SJAAM2ZV2KC024421, a 2019 BMW, Model M5, VIN WBSJF0C50KB447244, and a 2018 BMW, Model 7 Series 750i xDrive, VIN WBA7F2C55JG424733. The 2019 Cadillac Escalade, with the reported VIN of 1GYSHCKJXKR310153 was reported stolen from GMC Flow Buick located in 1205 Bradford Lane, Archdale, North Carolina 27263. It was reported stolen on September 11, 2021 to the Greensboro Police Department, reference police report number 2021-0911-129. The other six vehicles were stolen from Bentley of Pittsburgh on September 16, 2021, at approx. 0332 hours and then also transported interstate, as described in more detail below. The theft incident at Bentley of Pittsburgh was related to the above-referenced theft of license plates at the Enterprise Rent A Car business, which was approximately one-half mile from Bentley of Pittsburgh.

7. PSP WRATTF investigators investigated the two (2) crime scenes and gathered surveillance footage from both scenes. Surveillance footage showed the criminal participants use a black Ram pick-up truck with an unknown registration to transport criminal participants to the Bentley of Pittsburgh crime scene. When PSP WRATTF investigators observed the surveillance

3

footage at Bentley of Pittsburgh during the September 16, 2021 thefts, it showed the criminal participants removing the lock boxes containing the key fobs from the windows of the vehicles. The six vehicles were then driven to the nearby Enterprise Rent A Car location, where surveillance video footage showed some of the stolen vehicles being parked near a hillside.

8. At the Enterprise Rent A Car crime scene, a black Cadillac Escalade, along with a black Ram pick-up truck and a silver/gray Jeep Wrangler with New York registration of JBC4469, accompanied the perpetrators in the stolen vehicles to the Enterprise Rent A Car crime scene, where six license plates were stolen. Surveillance footage shows all of the aforementioned vehicles leaving the Enterprise Rent A Car crime scene at 0438 hours traveling on SR 19 North, with the stolen plates affixed to the stolen vehicles. Surveillance footage shows all of the aforementioned vehicles turning from Perry Highway North, making a left-hand turn onto Warrendale Bayne Road.

9. Investigators discovered that the above-referenced Jeep Wrangler with the New York registration of JBC4469 is owned by Avis Rent A Car and had been rented by a Naliyah HERD. According to the Avis records, HERD picked up the Wrangler on August 30, 2021 at 12:40 pm in Rock Hill, SC.

10. Surveillance captured on license plate reader on September 16, 2021 0614 hours, Mile Marker 150, Interstate 79, Morgantown, Monongalia County, West Virginia showed the aforementioned vehicles with the exception of the 2019 Bentley, Model Bentayga V8, VIN SJAAM2ZV2KC024421.

11. On September 16, 2021, Summersville Police Department discovered the 2019 Bentley, Model Bentayga V8, VIN SJAAM2ZV2KC024421 abandoned in the parking lot of Lowe's Home Improvement at 5200 West Webster Road, Summersville, West Virginia, 26651. Surveillance captured on September 16, 2021 at 0829 hours shows the 2019 Bentley, Model

Bentayga V8, VIN SJAAM2ZV2KC024421 and a Ford F250 pull into the lot. The Bentley operator parks the vehicle, exits the car and gets into the F250.

      12. On September 16, 2021 at approx. 1050 hours, Officer Bobby LYONS of the Hillsville Police Department of Carroll County, Virginia was working stationary radar on I-77 checking south bound traffic when he observed a black SUV traveling at a high rate of speed. Officer LYONS checked the vehicle's speed with his radar and found it to be going 81mph in a posted 65mph speed zone. There was a black four (4) door car that appeared to be traveling with it. Officer LYONS activated his emergency equipment and both vehicles exited the interstate onto the Exit 14 off ramp. Officer LYONS also observed a silver/gray Jeep Wrangler that was directly in front of him as they exited. Officer LYONS followed all three (3) vehicles as they traveled West on Route 58 at approximately 70mph, then made a right turn onto Airport Road, then made a right turn into an Exxon parking lot on Airport Road. The black SUV and the black four (4) door car turned back onto Airport Road and turned immediately into the Motel 6 parking lot and then behind the motel at 50mph, which led to a dead end. The two vehicles came to a stop. The driver of the black SUV then put a gun out of the driver's side window, then pulled it back into the vehicle, and then threw the gun out onto the pavement. Officer LYONS exited his vehicle and first approached the four (4) door black car, where he found two (2) black adult females in the front seat. Officer LYONS ordered them to put their hands on the dash and keep them there.

      13. Officer LYONS then engaged the black SUV, which was an Escalade, and took the driver at gunpoint and cuffed her. She was identified as Elon Jada TURNER. Officer LYONS took a quick look inside the Escalade and saw no other occupants. As Officer LYONS was taking the Escalade's driver back to his vehicle while trying to cover the black car, he also noticed that the silver/gray Jeep was now parked behind his patrol car. As Officer LYONS got closer to his patrol car, the Jeep abruptly turned around and left the lot. Officer LYONS observed the Jeep had New York registration plates displayed.

14. Officer LYONS went back to the black four (4) door car and took both black females out. The driver, Naliyah Tekayla Herd and passenger Alliyah Damia Watson were detained. The black car was then identified as a Mercedes-Benz bearing Pennsylvania registration plate JSR2643. However, that plate was registered as assigned to a 2014 Honda (the blue Honda at the Enterprise Rent A Car location in Pennsylvania), not the black Mercedes-Benz. Both females in the Mercedes-Benz told Officer LYONS that they were driving the car for two (2) black males they had just recently met at a strip club where they worked in Charlotte. They claimed they did not know the identities of the black males. They further told Officer LYONS that one of their friends was driving the gray/silver Jeep Wrangler that had pulled in behind Officer LYONS's patrol car.

15. Officers who thereafter arrived at the scene were alerted to the Jeep Wrangler's description, and they located the Jeep Wrangler parked in the nearby Exxon parking lot. The Jeep Wrangler was occupied by a black adult female. That vehicle displayed New York registration JBC4469 and was identified as the Wrangler rented by HERD from Avis. When confronted, the occupant of the Jeep Wrangler told the officers she was waiting on her sister. She also stated, contrary to the statements of the women in the black Mercedes-Benz, that she did not know the three (3) females Officer LYONS had stopped behind the motel. When asked why she drove behind the building, she told officers she thought that Officer LYONS was trying to stop her, so she just drove around to see if the officer wanted to talk to her.

16. Officer LYONS observed the VIN for the black Mercedes-Benz to be WDDUG6EB1JA409460, which was not in the National Crime Information Computer (NCIC) at that time. The following day, September 17, 2021, the black Mercedes-Benz was entered in NCIC as stolen (from Bentley of Pittsburgh). Officer LYONS observed the VIN of the Esacalde, which had been reported stolen to the Greensboro Police Department of North Carolina on September 11, 2021 from GMC Flow Buick located in 1205 Bradford Lane, Archdale, North Carolina 27263. Officer LYONS therefore seized and impounded the Escalade at Russell's Garage located at 539

Floyd Pike, Hillsville, Virginia. The cursory search conducted by Officer LYONS prior to impounding the Escalade revealed the console contained $77.00 in cash and a cellular phone. In the front passenger's compartment was a green bag with $1,381.00 in cash. In the back-right passengers' compartment was a wallet with two (2) North Carolina identifications belonging to Kevin Ja'Coryen James FIELDS and a second South Carolina identification was in the back-passenger's compartment belonging to Dewanne Lamar WHITE. In the back-hatch area, a black duffle bag with several tool sets and thirteen (13) key fobs were recovered. The black Mercedes-Benz was towed to Russell's Garage because it was improperly registered. The next day the Mercedes-Benz was identified as stolen. Elon Jada TURNER, the operator of the Escalade, was arrested for felony elude, brandishing a firearm and possession of stolen property.

17. On September 17, 2021 Officer LYONS traveled to Russell's Garage and ran the VIN number on the Mercedes-Benz, at which time he discovered the vehicle had been entered as stolen after the traffic stop the previous day. A hit message was sent to the entering agency of the stolen Mercedes-Benz and the vehicle was confirmed stolen. The Mercedes-Benz was thereafter recovered by Bentley of Pittsburgh. The other five vehicles stolen from Bentley of Pittsburgh have not yet been recovered.

## Cell Tower Dumps

18. Your Applicants know from experience that when a person makes and/or receives a call or text using a cellular telephone/mobile device, the call will be connected to a cell site location. Also, cellular telephones generally connect to cell site locations associated with the appropriate provider or other providers using the same technology through established roaming agreements. This connection information can be obtained from cellular telephone providers and is commonly referred to as a "tower dump record." Cellular telephone companies can provide detailed records of all in-coming and out-going calls, in addition to cellular connections, that are processed through a specific cell site location for a given time.

7

19. Further, through training and experience, WRATTF investigators know that each of the communications that the actor(s) make or receive with their cellular devices will register on the particular cellular tower that provides service to the particular geographical location at the time of the communication.  If, the cell phone is moving during the call, and the call continues while the phone is leaving the geographical location covered by the cell tower which is servicing the call, and the length of the signal will transfer to a different tower that provides service to the new location as the phone enters that new location. Even brief communications between the tower and cellular device will register on a particular tower that provides service to the particular geographical location where the user is present during the communication.  The requested cell tower dump records will not only provide investigators with all the telephone numbers that are utilizing particular towers at given times, but can also identify a unique pattern or path as to cell phone users who traveled the same routes as the perpetrators in this case, and during the same time period. This information may then be used to include or exclude potential suspects.

20. In order to minimize the amount of extraneous telephone data to be analyzed, your Applicants will only be requesting information to be collected from specified dates, time frames and locations.  Upon receipt of the data from the "tower dump records", a review and comparison will be conducted between the information received from each of the towers for the purpose of identifying cell phones that were used in these theft incidents.

21. For this reason, and based on the information set out above regarding the theft incidents which occurred during the nights of 9/16/2021, your Applicants request the following cellular tower dump/download records servicing the areas on the dates and times set forth below:

1. 09/16/2021 0138-0230 hours, Perry Highway at Warrendale Bayne Road, Marshall Township, Allegheny County, Pennsylvania, GPS 40.655053, -80.086649.
2. 09/16/2021 0300-0430 hours Enterprise Rent A Car, 300 Pine Lane, Warrendale, Marshall Township, Allegheny County, PA 15086, GPS 40.652421, -80.081077.
3. 09/16/2021 0300-0430 hours Bentley of Pittsburgh, 15001 Perry Highway, Wexford, Marshall Township, Allegheny County, PA 15090 GPS 40.646656, -80.074353.

4. 09/16/2021 0415-0445 hours, Perry Highway at Warrendale Bayne Road, Marshall Township, Allegheny County, Pennsylvania, GPS 40.655053, -80.086649.
5. 09/16/2021 0545-0615 hours, Mile Marker 150, Interstate 79, Morgantown, Monongalia County, West Virginia, GPS 39.59628, -79.98553.
6. 09/16/2021 0815-0830 hours, Lowe's Home Improvement at 5200 West Webster Road, West Virginia, 26651, GPS 38.30849, -80.83696.
7. 09/16/2021, AT 1045-1145 hours, Motel 6, 57 Airport Road, Hillsville, Virginia 24343, GPS 36.74488, -80.77735.

All listed times are Eastern Daylight Time (EDT).

22. The requested tower dump records are to be provided by the following cellular service providers: ATT Wireless (including Cricket), Verizon, T-Mobile, MetroPCS, and Sprint Corporation. This includes tower dump records from all cell-sites and sectors that cover the immediate area of Locations 1-6 above that would support any and all communications including; voice calls, text messages, any data connections.

## FACTS ABOUT CELL TOWERS IN GENERAL

23. Many cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. These cell towers allow the wireless devices to transmit or receive communications, such as phone calls, text messages, and other data. The tower closest to a wireless device does not necessarily serve every call made to or from that device.

24. In addition to having a unique telephone number, each cell phone can be identified by one or more additional unique identifiers. Depending on the cellular network and the device, the unique identifiers for a cell phone could include an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").

9

25. Cellular service providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower at any given time. For each communication, these records may include the telephone call number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device; and the type of communication transmitted through the tower (such as phone call or text message).

26. Communications made or received with a cell phone will register on the particular cell tower that provides service to the particular geographical location of the cell phone at the time of the communication. If, as is suspected in this case, the devices are moving, and the length of a call exceeds a certain amount of time, the signal will transfer to a different tower that provides service to the location into which the cell phone is traveling.

27. Providing the cellular service providers with the approximate coordinates (latitude/longitude) of a cell phone at a given time will permit the providers to determine which of their cell towers likely serviced the communications from that cell phone at that time. The coordinates set forth in Attachment A, relating to the various locations of the surveillance videos, were obtained from Google Maps.

28. Based on the above facts, there is reason to believe that the records described in Attachment A would identify cell phones which were in the relevant locations at the relevant times. This information, in turn, will assist law enforcement in identifying persons who were involved in the offenses.

## REQUEST FOR ORDER

29. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the offenses described above. Accordingly, the United States requests that the Service Providers be directed to produce all items described in Part II of Attachment A to the proposed Order.

30. The United States further requests that the Order require the Service Providers not to notify any person, including individuals whose wireless devices connected to the cellular telephone towers described in Part I of Attachment A, of the existence of the Order until further order of the Court. See 18 U.S.C. § 2705(b). Such a requirement is justified because the Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. See 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

31. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of

the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

          Respectfully submitted,

          CINDY K. CHUNG
          United States Attorney


          *s/ Shaun E. Sweeney*
          SHAUN E. SWEENEY
          Assistant United States Attorney
          PA ID No. 53568